**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JOWANNA HUDSON, on behalf of herself and others similarly situated,

     Plaintiff,

v.

THE BOPPY COMPANY LLC,

     Defendant.

---

## CLASS ACTION COMPLAINT

---

     Plaintiff, Jowanna Hudson, on behalf of herself and all others similarly situated as defined below, by and through her attorneys, submit the following as her Complaint against Defendant THE BOPPY COMPANY LLC.

### <u>INTRODUCTION</u>

     1.     Plaintiff brings this action on behalf of herself and the proposed class of purchasers and users of The Boppy Company's ("Boppy") newborn loungers.

     2.     Boppy's newborn loungers have been linked to the deaths of at least eight infants between December 2015 and June 2020.

     3.     On September 23, 2021, the U.S. Consumer Product Safety Commission ("CPSC") recalled over three million newborn loungers sold by Boppy.

4.     Defendant's Recall Notice states that infants had reportedly suffocated after being placed in the loungers on their back, side, or stomach.[1]

5.     Two more infants passed away following the September 2021 recall due to unsafe sleeping environments connected to Boppy's newborn loungers.

6.     Plaintiff purchased a lounger from Wal-Mart, which she used regularly through the Boppy's Recall Notice.

7.     Boppy now offers pro-rated refunds for consumers who purchased Recalled Loungers.[2]

8.     Plaintiff seeks to recover damages based on, *inter alia*, Boppy's breach of express warranty, breach of implied warranties, negligence, unjust enrichment, and breach of Colorado consumer protection statutes.

### PARTIES

9.     Plaintiff Jowanna Hudson is an individual residing and resident and citizen  of the State of Georgia.

10.     Defendant The Boppy Company is incorporated and has its principal place of business in Golden, Colorado. The Defendant is engaged in the business of selling and distributing infant carriers and nursing pillows across the United States and Canada.

### JURISDICTION AND VENUE

11.     This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d),

---

[1] *The Boppy Company Recalls Over 3 Million Original Newborn Loungers, Boppy Preferred Newborn Loungers and Pottery Barn Kids Boppy Newborn Loungers After 8 Infant Deaths; Suffocation Risk*, United States Consumer Product Safety Commission (Sept. 23, 2021), https://www.cpsc.gov/Recalls/2021/The-Boppy-Company-Recalls-Over-3-Million-Original-Newborn-Loungers-Boppy-Preferred-Newborn-Loungers-and-Pottery-Barn-Kids-Boppy-Newborn-Loungers-After-8-Infant-Deaths-Suffocation-Risk.
[2] *Safety Recalls*, boppy., https://www.boppy.com/pages/product-recalls (last visited June 14, 2023).

because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, because they form part of the case or controversy as the claims within the Court's original jurisdiction.

12.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and 18 U.S.C. § 1965, because Defendant transacts business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and because Defendant caused harm to class members residing in this District.

13.    This Court has personal jurisdiction over the Defendant because Defendant conducts substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and related to Defendant's contact with this District. Moreover, Defendant has its principal place of business in the forum District. Further, Defendant has transacted business, maintained substantial contacts, purposefully targeted consumers for sales of its devices and/or committed overt acts in furtherance of the unlawful acts alleged in this Complaint in this District, as well as throughout the United States. The unlawful acts of Defendant have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District as well as throughout the United States.

## FACTUAL BACKGROUND

14.    "The Boppy Pledge" webpage was published on April 23, 2021.

15. On this webpage, Boppy claims that since their inception, "Boppy has been committed to the safety of infants" and "Boppy is committed to doing everything possible to help make babies safer."[3]

 Since our beginning, Boppy has been committed to the safety of infants. Boppy® products are designed by women and mothers to provide the most support possible. From nursing solutions to a hands-free moment, we're here to support moms and want to ensure Boppy product(s) are being used correctly and confidently...because there are enough unknowns in parenting!

16. Boppy developed, marketed and sold three models of newborn baby loungers that were the subject of the recall: the Original Newborn Lounger (left), the Boppy Preferred Newborn Lounger (middle), and the Pottery Barn Kids Boppy Newborn Lounger (right).



Recalled Boppy Original Newborn Lounger (left), Boppy Preferred Newborn Lounger (middle), and Pottery Barn Kids Boppy Newborn Lounger (right) [4]

---

[3] *the boppy pledge*, boppy. (Apr. 23, 2021), https://www.boppy.com/blogs/boppy/the-boppy-pledge.
[4] United States Consumer Product Safety Commission, *supra* note 1.



17.     Boppy sold these loungers in various colors, ranging in price from thirty to forty-four dollars.[6]

18.     The loungers measure about twenty-three inches long by twenty-two inches wide and seven inches high.[7]

19.     Boppy advertised the newborn loungers as a "safe place to set newborn down for hands-free movement," emphasizing the "recessed interior" in which the infant will fit "perfectly."[8]

[5] *Boppy. homepage*, WayBack Machine (Apr. 12, 2019),
https://web.archive.org/web/20190412121511/https://www.boppy.com/.
[6] United States Consumer Product Safety Commission, *supra* note 1.
[7] *Id.*
[8] *Boppy Newborn Lounger*, WayBack Machine (Apr. 12, 2019),
https://web.archive.org/web/20200923150319/https://www.boppy.com/products/boppy-newborn-lounger?variant=29491106840646



# Boppy® Newborn Lounger

- Newborn pillow with recessed interior provides perfect place for baby to coo and kick in comfort
- Soft, wipeable fabric and machine washable
- Safe place to set newborn down for hands-free moment



🛒 Add to cart



| Reviews | **Product Details** | Features |

Your newborn will feel relaxed and secure when snugly cradled in the Boppy® Newborn Lounger. Your baby's bottom fits perfectly in the recessed interior with the surrounding pillow providing support so she can easily see and connect with the world around her. Messes wipe up easily so there's no need to do more laundry. And when it's time to pick up and move, the Newborn Lounger's cloth handle and lightweight materials are easy to grab and go! Machine washable for those bigger messes.

20.     Boppy did not provide "safe sleep" instructions in the "Product Details" tab or the "Features' tab on their website shop listing for the newborn loungers.[9]

| Reviews | Product Details | **Features** | |

- Soft, wipeable fabric and machine washable
- Perfect place to set newborn down for hands-free moment
- For Babies up to 16 Pounds
- Designed for baby's awake time
- Attached cloth handle for easy carrying and travel
- Must-have product for newborns
- Product dimensions: 18" x 7" x 18"

---

[9] *Id.*

21.     Instead, as of April 2019, the link to the "safe sleep" webpage was provided in the website's footer along with twenty-one other links.[10]



A.     **Boppy's Newborn Loungers Endangered Infants**

22.     Following eight (8) reports of infant deaths associated with the Boppy Company Newborn Lounger, the CPSC issued a recall of Boppy's newborn loungers.

23.     Infants reportedly suffered asphyxiation after being placed on their back, side, or stomach on the lounger and were found on their side or on their stomach.

24.     In the Recall Notice, Acting Chairman of the CPSC Robert S. Adler explained:

> "Loungers and pillow-like products are not safe for infant sleep, due to the risk of suffocation. Since we know that infants sleep so much of the time – even in products not intended for sleep – and since suffocation can happen quickly, these Boppy lounger products are simply too risky to remain on the market."[11]

25.     Boppy sold about three million three-hundred thousand of the Recalled Loungers at various stores and mass merchandisers nationwide and online.

---

[10] *Id.*
[11] United States Consumer Product Safety Commission, *supra* note 1.

26.     Two more reports of infant deaths related to the loungers followed the September 2021 recall.[12]

**B.  The Health and Safety Risks to Infants Associated with the Use of the Recalled Devices Renders Them Worthless**

27.     As a result of the health and safety risks to infants posed by the use of the newborn loungers, together with Boppy's concealment of these risks from the date the first death was reported, the newborn loungers have been rendered completely worthless or, at the very least, have been substantially diminished in value.

28.     The information described above, including the now-known health and safety risks to infants of the loungers, the recall, and the medical warnings and advice issued by Boppy, have rendered the loungers worthless to consumers. If parents of infants choose to discontinue use of the loungers, they must pay for another product that can serve the lounger's intended purpose.

29.     Consumers have been told by the CPSC that they should immediately stop using the Recalled Loungers and contact the Boppy Company for a pro-rated refund.

**C.  Boppy Delayed its Recall**

30.     At no time prior to the September 23, 2021 recall did Boppy disclose to purchasers or users of the health and safety risks of the Recalled Loungers.

31.     Boppy has not disclosed when they first discovered or received reports from users of the Recalled Loungers regarding the risk of asphyxiation.

32.     At a minimum, Boppy was aware of the risk of infant asphyxiation associated with the newborn loungers in February 2016, when the first infant death was reported in the news.

---

[12] Jonathan Franklin, *2 more infants die using Boppy loungers after a product recall was issued in 2021*, National Public Radio (June 6, 2023, 3:39 PM), https://www.npr.org/2023/06/06/1180460943/boppys-recalled-infant-lounger-10-deaths.

# Death of infant boy in Boppy pillow at Homewood daycare 'accidental,' coroner says

Published: Feb. 12, 2016, 9:20 p.m.

33.     Yet, Boppy continued to manufacture and sell the newborn loungers with such awareness. During this period, Boppy unreasonably and unjustly profited from the manufacture and sale of the Recalled Loungers and unreasonably put infants at risk of asphyxiation.

34.     Following the recall, Boppy began offering pro-rated refunds to consumers who purchased Recalled Loungers. Consumers who purchased a thirty-dollar newborn lounger before 2018 would receive less than nine dollars.

---

[13] Micah McMullin, *Death of infant boy in Boppy pillow at Homewood daycare 'accidental,' coroner says*, Birmingham Real-Time News (Feb. 12, 2016, 9:20 PM), https://www.al.com/news/birmingham/2016/02/death_of_infant_boy_in_boppy_p.html#:~:text=The%20death%20of%20a%204,died%20from%20complications%20of%20asphyxia.



**Pro-rated Newborn Lounger Refund Guide**

| Consumer with Receipt of Purchase, photo of UPC and date code, and photo of destroyed product | |
|---|---|
| | |
| Purchased 0-1 year before recall announcement | Full refund of purchase price on receipt |
| Purchased 1-2 years before recall announcement | 75% refund of purchase price on receipt |
| Purchased 2-3 years before recall announcement | 50% refund of purchase price on receipt |
| Purchased more than 3 years before recall announcement | 25% refund of purchase price on receipt |

| Consumer without Receipt of Purchase, but with photo of UPC and date code, and photo of destroyed product | |
|---|---|
| | |
| DOM 0-1 year before recall announcement | 100% refund of retail price on DOM (date of manufacture) |
| DOM 1-2 years before recall announcement | 75% refund of retail price on DOM |
| DOM 2-3 years before recall announcement | 50% refund of retail price on DOM |
| DOM more than 3 years before recall announcement | 25% refund of retail price on DOM |

Consumers with photo of destroyed product only, without receipts or photos of UPC and date code will receive the lowest refund amount.

[14]

## D. Plaintiffs

35.     Plaintiff Jowanna Hudson is, and was at all relevant times, an individual and a resident and citizen of the state of Georgia.

36.     Plaintiff purchased a new Boppy Preferred New Born Lounger in 2018 from Wal-Mart located at 6020 Harrison Rd., Macon, Georgia 31206 for her soon to be born child.

37.     Plaintiff used the product daily for 5 months with her newborn child; unaware of the risks associated with the Boppy Preferred New Born Lounger and the dangers it posed to her child's health and safety.

---

[14] *Pro-Rated Newborn Lounger Refund Guide*, boppy., https://cdn.shopify.com/s/files/1/0039/7043/3094/files/Pro-rated_Refund_Guide.pdf?v=1636141406 (last visited June 14, 2023).

## **TOLLING AND ESTOPPEL**

### A. Discovery Rule Tolling

38.      Plaintiff and the members of the Class had no way of knowing about Boppy's conduct with respect to the asphyxiation risks associated with the use and non-use of the Recalled Loungers.

39.      Neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Boppy alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Boppy was engaged in the conduct alleged herein.

40.      For these reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Class.

### B. Fraudulent Concealment Tolling

41.      By failing to provide immediate notice of the risks of asphyxiation associated with continued use and non-use of the Recalled Loungers, Boppy concealed its conduct and the existence of the claims asserted herein from Plaintiff and the members of the Class.

42.      Upon information and brief, Boppy intended its acts to conceal the facts and claims from Plaintiff and members of the Class. Plaintiff and members of the Class were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Boppy's conduct. For this reason, any statute of limitations that otherwise may apply to claims of Plaintiffs or members of the Class should be tolled.

## CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). Plaintiffs seek class certification on behalf of the class defined as follows (the "Class"):

> All persons in the United States who purchased or used a Boppy Original Newborn Lounger, Boppy Preferred Newborn Lounger, or Pottery Barn Kids Boppy Newborn Lounger that was distributed or sold by Boppy from January 2004 through September 2021.

44.     Plaintiffs reserve the right to modify or refine the definition of the Class based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

45.     Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries and any entity in which Defendant or their parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this mater have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

46.     **Numerosity (Rule 23(a)(1)).** The Class members are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class, as herein identified and described, is not known, but the Recall Notice indicates that millions of individuals have purchased Recalled Loungers.

47.    **Commonality and Predominance (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

- whether Defendant owed a duty of care to Plaintiffs and the Class;

- whether Defendant knew or should have know that the Recalled Loungers posed health and safety risks to infants;

- whether Defendant wrongfully represented that the Recalled Loungers were safe;

- whether the recalled devices retained any value post-recall;

- whether Defendant wrongfully represented that the Recalled Loungers were safe to use;

- whether Defendant wrongfully failed to disclose that the Recalled Loungers posed health and safety risks to infants;

- whether Defendant's representations and omissions in advertising, warranties, packaging, and/or labeling were false, deceptive, and/or misleading;

- whether those representations and omissions were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health and safety risks of their infant children as a material fact in purchasing one of the Recalled Loungers;

- whether Defendant had knowledge that those representations and omissions were false, deceptive, and misleading;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in unfair trade practices;

- whether Defendant engaged in false advertising;

- whether Defendant's conduct was negligent per se;

- whether Defendant made negligent and/or fraudulent misrepresentation and/or omissions; and

- whether Plaintiff and the members of the Class are entitled to actual, statutory and punitive damages.

48. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and members of the Class suffered injuries as a result of Defendant's wrongful conduct that is uniform across the Class.

49. **Adequacy (Rule 23(a)(4)).** Plaintiff's interests are aligned with the Class they seek to represent. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent counsel experience in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interests of the Class. Plaintiff has no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and [their] counsel are committed to vigorously prosecuting this action on behalf of the members of the Class.

50. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the

Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Class treatment will create economies of time, effort and expense and promote uniform decision-making.

51. **Certification of Specific Issues (Rule 23(c)(4)).** To the extent that any described Class herein does not meet the requirements of Rule 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

52. **Declaratory and Injunctive Relief (Rule 23(b)(2)).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive and declaratory relief, as described herein, with respect to the members of the Class as a whole.

<u>**CLAIMS FOR RELIEF**</u>

<u>**FIRST CLAIM FOR RELIEF**</u>
**BREACH OF EXPRESS WARRANTY**

53. Plaintiffs incorporate the foregoing allegation as if fully set forth herein.

54. Plaintiffs bring this claim on behalf of themselves individually and on behalf of the Class.

55. Boppy marketed and sold the Recalled Loungers into the stream of commerce with the intent that the Recalled Loungers would be purchased or used by Plaintiff and the Class.

56. Boppy expressly warranted, advertised, and represented to Plaintiff and the Class that the Recalled Loungers were safe and appropriate for use.

57. Boppy made these express warranties regarding the Recalled Loungers' quality and fitness for use in writing through its website, advertisements, and marketing materials, and on

the Recalled Loungers' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Recalled Loungers.

58.     Boppy's advertisements, warranties, representations and omissions regarding health risks associated with the Recalled Loungers, were made in connections with the sale of the Recalled Loungers to Plaintiffs and the Class. Plaintiffs and the Class justifiably relied on Boppy's advertisements, warranties, representations, and omissions regarding the Recalled Loungers in deciding whether to purchase and/or use Boppy's Recalled Loungers.

59.     Boppy's Recalled Loungers do not conform to Boppy's advertisements, warranties, representations and omissions in that they are not safe and appropriate for human and infant use, and pose risks of serious injury, including asphyxiation.

60.     Boppy therefore breached its express warranties by placing the Recalled Loungers into the stream of commerce and selling them to consumers, when their use posed health and safety risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for infant use as marketed by Boppy. These associated health and safety risks substantially impair the use, value, and safety of the Recalled Loungers, rendering them worthless.

61.     Boppy was aware, or should have been aware, of the danger to health and safety of the use of the Recalled Loungers, but nowhere on the package labeling or Boppy's website did Boppy warn Plaintiff and other members of the Class that their infants were at risk of asphyxiation as a result of them rolling on or off the Recalled Loungers.

62.     Instead, Boppy concealed the dangerous health and safety risks of the Recalled Loungers and deceptively represented that these products were safe and appropriate for infant use. Boppy failed to ensure that the material representations it made to consumers were true.

63.     The adverse health and safety effects associated with the use of the Recalled Loungers existed when they left Boppy's possession or control and were sold to Plaintiff and members of the Class. The dangers associate with use of the Recalled Loungers was undiscoverable by Plaintiff and members of the Class at the time of purchase of the Recalled Loungers.

64.     As manufacturers, marketers, advertisers, distributors and sellers of the Recalled Loungers, Boppy had exclusive knowledge and notice of the fact that the Recalled Loungers did not conform to the affirmations of fact and promises.

65.     In addition, or in the alternative, to the formation of an express contract, Boppy made each of the above-described representations and omissions to induce Plaintiff and members of the Class to rely on such representations and omissions.

66.     Boppy's affirmations of fact and promises and its omissions were material and Plaintiff and members of the Class reasonably relied upon such representations and omissions in purchasing and/or using the Recalled Loungers.

67.     Plaintiff and members of the Class have performed all conditions precedent to Boppy's liability for its breach of express warranty.

68.     As a direct and proximate result of Boppy's breaches of express warranty, Plaintiff and members of the Class have been damaged because they did not receive the products as specifically warranted by Boppy. Plaintiff and members of the Class did not receive the benefit

of the bargain and suffered damages at the point of sale stemming from their payment for the Recalled Loungers.

69.     Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Boppy's failure to deliver goods conforming to their express warranties and resulting breach.

**SECOND CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

70.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

71.     Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

72.     Boppy is a merchant engaging in the sale of goods to Plaintiff and the Class.

73.     At all times mentioned herein, Boppy manufactured or supplied the Recalled Loungers, and prior to the time the Recalled Loungers were purchased or used by Plaintiff and the Class, Boppy impliedly warranted to them that the Recalled Loungers were of merchantable quality, fit for their ordinary use and conformed to the promises and affirmation of fact and omissions made on the Recalled Loungers' labels and packaging, including that the Recalled Loungers were safe and appropriate for infant use. Plaintiff and the Class relied on Boppy's promises and affirmations of fact and omissions when they purchased and used the Recalled Loungers.

74.     Contrary to these representations and warranties, the Recalled Loungers were not fit for their ordinary use and did not conform to Boppy's affirmations of fact and promises and omissions because use of the Recalled Loungers is accompanied by the risk of asphyxiation, which does not conform to the advertising of these loungers.

75.     Boppy breached its implied warranties by selling Recalled Loungers that failed to conform to the promises or affirmations of fact made on the advertising and labels, as use of each Recalled Loungers was accompanied by the risks of asphyxiation that does not conform to the advertising or labels.

76.     Privity exists because Boppy impliedly warranted to Plaintiff and the Class through warranting, packaging, advertising, marketing, and labeling that the Recalled Loungers were safe for infant use and made no mention of the risks for asphyxiation associated with use of the Recalled Loungers.

77.     As a direct and proximate result of Boppy's conduct, Plaintiff and the Class have suffered actual damages in that each Recalled Loungers they purchased is worth less than the price they paid and which they would not have purchased or used at all had they known of the attendant risks to infants associated with the use of each Recalled Loungers.

78.     Plaintiff and the Class seeks actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Boppy's failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

79.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

80.     Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

81.     When Plaintiff and members of the Class purchased the Recalled Lounger, they reasonably relied upon Boppy's experience, skill, and judgment that the Recalled Loungers were fit for the particular purpose of providing adequate support to infants, safely allowing for hands-free movement.

82.     Boppy knew that Plaintiff and members of the Class relied upon it for its experience, skill, and judgment when Plaintiff and members of the Class purchased the Recalled Loungers, and that Plaintiff an members of the Class purchased the Recalled Lounger for the purpose of providing adequate support for infants to allow for hands-free movement.

83.     The Recalled Loungers were unfit for the particular purpose of adequately support infant's bodies. Boppy therefore breached the implied warranty of fitness for a particular purpose with respect to the Recalled Loungers. Plaintiff and Members of the Class were only notified of this breach on September 23, 2021, the date of the Recall Notice.

84.     As a direct and proximate result of Boppy's breach of the implied warranty of fitness for a particular purpose, Plaintiff and members of the Class sustained injuries and damages in that the item they purchased was worth less than the price they paid and which they would not have purchased or used at all had they been aware that the Recalled Loungers were not fit for their particular purpose. These damages were reasonably foreseeable consequences of Boppy's breach.

85.     Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Boppy's failure to deliver goods conforming to their implied warranties and resulting breach.

### FOURTH CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION

86.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

87.     Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

88.     Boppy failed to advise Plaintiff and the Class that the Recalled Loungers were not safe for infant use.

89.     Boppy intentionally, knowingly, and recklessly made these misrepresentations and omissions to induce Plaintiff and the Class to purchase the Recalled Loungers.

90.     Boppy knew that its representations and omissions about the Recalled Loungers were false in that the Recalled Loungers do not conform to the products' advertising and labels. Boppy knowingly allowed its advertising and promotional material to mislead consumers, such as Plaintiff and the Class.

91.     Plaintiff and the Class did in fact rely on these omissions and misrepresentations and purchased and/or used the Recalled Loungers to their detriment. Given the deceptive manners in which Boppy advertised, represented, and otherwise promoted the Recalled Loungers, Plaintiff's and the Class' reliance on Boppy's omissions and misrepresentations was justifiable.

92.     As a direct and proximate result of Boppy's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased the Recalled Loungers (a) that were worth less than the price they paid, (b) which they would not have purchased or used at all had they known of the health risks, including asphyxiation, associated with the use of the Recalled Loungers, and (c) which did not conform to the Recalled Loungers' advertising, statements, and labels.

93.     Plaintiff and the Class seek actual damages, attorney's fees, costs and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF
### FRAUD BY OMISSION

94.     Plaintiff incorporates the foregoing allegation as if fully set forth herein.

95.     Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

96.     Boppy concealed from and failed to disclose to Plaintiff and the Class that use of the Recalled Loungers is accompanied by health and safety risks, which does not conform to the products' labels, advertising, or statements.

97.     Boppy was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Recalled Loungers because: (a) Boppy was in a superior position to know the true state of facts about its products; (b) Boppy was in a superior position to know the risks associated with the use of, characteristics of and suitability of the Recalled Loungers for use by individuals; and (c) Boppy knew that Plaintiff and the Class could not reasonably have been expected to learn or discover prior to purchasing the recalled loungers that there were misrepresentations and omissions by Boppy in the labels, advertising, and statements regarding the health risks associated with use of these devices.

98.     The facts concealed or not disclosed by Boppy to Plaintiff and the Class were material in that a reasonably consumer would have considered them important when deciding whether to purchase the Recalled Loungers.

99.     Plaintiff and the Class justifiably relied on Boppy's omissions to their detriment. The detriment is evident from the true quality, characteristics, and risk associated with the use of the Recalled Loungers, which is inferior when compared to how the Recalled Loungers were advertised and represented by Boppy.

100.    As a direct and proximate result of Boppy's conduct, Plaintiff and the Class have suffered actual damages in that they purchased or used the Recalled Loungers (a) that were worth less than the price they paid, (b) which they would not have purchased or used at all had they known of the health and safety risks associated with use of the Recalled Loungers, and (c) which do not conform to the Recalled Loungers' labels, advertising, or statements.

101.    Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

**SIXTH CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**

102.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

103.    Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

104.    Boppy had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the development, testing, manufacturing, marketing, distribution, and sale of the Recalled Loungers.

105.    Boppy breached its duty to Plaintiff and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that did not have qualities, characteristics, and suitability for use as advertised by Boppy and by failing to promptly remove the Recalled Loungers from the marketplace or to take other appropriate remedial action upon becoming aware of the health and safety risks of the Recalled Loungers.

106.    Boppy knew or should have known that the qualities and characteristics of the Recalled Loungers were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Boppy. Specifically, Boppy knew or should have known that: (a) the use of the Recalled Loungers was accompanied by risks of infant asphyxiation that does not conform to the advertising or labeling; (b) the Recalled Loungers were adulterated by the insecure recessed interior; and (c) the Recalled Loungers were otherwise not as warranted by Boppy.

107. As a direct and proximate result of Boppy's conduct, Plaintiff and the Class have suffered actual damages in that they purchased or used the Recalled Loungers (a) that were worth less than the price they paid, (b) which they would not have purchased or used at all had they known that infants could roll on or off of the loungers and suffer adverse health effects; and (c) which do not conform to the product's advertising, labeling, and statements.

108. Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

## SEVENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

109. Plaintiff incorporates the foregoing allegation as if fully set forth herein.

110. Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

111. Plaintiff and the Class conferred substantial benefits on Boppy through their purchase of the Recalled Loungers. Boppy knowingly and willingly accepted and enjoyed these benefits.

112. Boppy either knew or should have known that the payments rendered by Plaintiff and the Class was given with the expectation that the Recalled Loungers would have the qualities, characteristics, and suitability for use represented and warranted by Boppy. As such, it would be inequitable for Boppy to retain the benefit of the payments under these circumstances.

113. Boppy's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Boppy to retain the benefits without payment of the value to Plaintiff and the Class.

114. Plaintiff and the Class are entitled to recover from Boppy all revenue wrongfully collected and improperly retained by Defendant, plus interest thereon.

115. Plaintiff and the Class seeks actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

**EIGHTH CLAIM FOR RELIEF**
**COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. § 6-1-105.**

116. Plaintiff incorporates the foregoing allegation as if fully set forth herein.

117. Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

118. Boppy is incorporated in Colorado and engaged in "trade or commerce" in the state, as defined by Colo. Rev. Stat. § 6-4-103, because Boppy carries out economic activity in Colorado relating to a commodity or service.

119. Colorado's Consumer Protection Act prohibits unfair or deceptive trade practices pursuant to Colo. Rev. Stat § 6-1-105, which include "knowingly or recklessly [making] a false representation as to the characteristics … of goods" and "[representing] that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another."

120. For the reasons discussed herein, Boppy violated and continued to violate the Colorado Consumer Protection Act by engaging in the herein described deceptive, unfair acts or practices proscribed. Boppy's acts and practices described herein, including its material omissions, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

121.    Boppy repeatedly advertised on its website and in advertising campaigns for the Recalled Loungers that they were safe and fit for infant use. Boppy failed to disclose the material information that the Loungers were unsafe and unfit for infant use.

122.    Boppy's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase and use the Recalled Loungers without being aware of the dangers of infants rolling on or off the lounger, and therefore the Recalled Loungers were unsafe and unfit for infant use. As a direct and proximate result of Boppy's unfair and deceptive acts or practices, Plaintiff and the Class suffered damages by purchasing the Recalled Loungers because they would not have purchased or used the Recalled Loungers had they known the true dangers of the product, and they received a product that was worthless because it allowed infants to roll around which can cause adverse health effects including asphyxiation.

123.    Boppy's deceptive trade practices caused injury in fact and actual damages to Plaintiffs and the Class members in the form of the loss or diminishment of the value of the Recalled Loungers that Plaintiff and the Class members purchased or used, which allowed Boppy to profit at the expense of Plaintiff and the Class members. The injuries Plaintiffs and the Class members sustained were to legally protect interests. The gravity of the harm of Boppy's actions is significant and there is no corresponding benefit to consumers of such conduct.

124.    Plaintiff and the Class members seek relief for the injuries they have suffered as a result of Boppy's unfair and deceptive acts and practices as provided by Colo. Rev. Stat. § 6-1-105.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Boppy as to each and every count, including:

A. An order certifying this action and the Class requested herein as a class action, designating Plaintiff as representative of the Class and appointing Plaintiff's counsel as counsel to the Class;

B. An order declaring that Boppy's actions constitute: (i) breach of express warranty; (ii) breach of implied warranty of merchantability; (iii) breach of implied warranty of fitness for a particular purpose; (iv) fraudulent misrepresentation; (v) fraud by omission; (vi) negligent misrepresentation; (vii) unjust enrichment; and (viii) violation of the Colorado Consumer Protection Act, and that Boppy is liable to Plaintiff and the Class, as described herein, for damages arising therefrom;

C. A judgment awarding Plaintiff and members of the class all appropriate damages in an amount to be determined at trial;

D. A judgment awarding Plaintiff and the Class prejudgment and post-judgment interest, as permitted by law;

E. A judgment awarding Plaintiff and the Class costs and fees, including attorney's fees, as permitted by law; and

F. Grant such other legal, equitable, or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: June 19, 2023

Respectfully Submitted,

*/s/Blake G. Abbott*
Blake G. Abbott (N.C. Bar No.  57190)
Paul Doolittle (*Pro Hac Vice Forthcoming*)
**Poulin | Willey, |Anastopoulo LLC**
32 Ann Street
Charleston, SC 29403
803-222-2222
Email: blake@akimlawfirm.com
pauld@akimlawfirm.com

*Attorneys for Plaintiff*
